Barker, J.
—The action is to recover from the defendants a fair and reasonable compensation for the board furnished by the plaintiff and his wife in their home to Amelia Hitchcock, the mother of the defendants. It is not claimed by the plaintiff that he made a case for recovery based upon any contract made by the defendants, or either of them, by specific terms, by which they agreed to pay for their mother’s board in his family; but he does contend, that it was established on the trial by fair preponderance of the evidence that the board furnished by him to Hrs. Hitchcock was at their requést, and under such circumstances that the law implies a promise on their part to pay him a fair and just compensation for such support and maintenance.
All of the material evidence bearing on the questions in dispute, was given by the parties to the record and the wife of the plaintiff. The plaintiff’s wife is a daughter of Mrs. *252 Hitchcock and for a considerable time immediately preceding the death of her father, both of her parents boarded in the family of the plaintiff at the fixed and agreed price of five dollars per week. After the death of Mr. Hitchcock, his widow continued to reside in the family of the plaintiff for a period and it is for the recovery of her board and maintenance during this time,- that this action is brought.
Upon all questions in dispute we think there was no preponderance of evidence in the plaintiff’s favor and that the judgment should be affirmed. While Mrs. Hitchcock was living in the plaintiff’s family and soon after the death of her husband, there was a consultation between the defendants, the plaintiff and his wife in regard to her support and maintenance and how it should be provided for. As to-what took place at that interview, all the participants in the conversation have testified as witnesses. No one can read their evidence without being decidedly impressed with the conviction, that the defendants did not request the plaintiff to board their mother at their expense, in whole or in part. The evidence is brief and is collated in this connection that its force and meaning may be readily apprehended. The plaintiff relates the conversation substantially in this language:
“After the death of Mr. Hitchcock I had a talk with the defendants in reference to the board and care of Amelia; this was about the 9th of February, 1881; it was at my house on Pearl street, in the village of Canandaigua; defendants came there about dark; they said, they wanted to know if I would board their mother at the same price, as I had boarded her before; that is, $2.50 per week; Curtis did most of the talking, I think; I told them I could not do it for that, and repeated it several times; Curtis asked me if I could take the old lady at five dollars a week and relieve them of all responsibility; I said no; I said I would for three dollars per week, as long as she was around, and I saw fit; but I would take no risk; refused to take less than three dollars per week a number of times; this conversation lasted from about dark until eleven o’clock, when the defendants went away; I kept her from that time until May 18, 1885; her board during that time was worth three dollars per week.”
The plaintiff’s wife in her evidence as to the same interview testified as follows:
“ I remember the conversation with the defendants in February, 1881, in the evehing; it was the first conversation after father’s death, in reference to mother’s board; they came there and they asked if we would board her for $2.50 per week; my husband said no, she was getting old and needed more care, and that he would board her for *253 three dollars per week; they said that was too much1 the defendants asked him if he would take care of her for five dollars per week and save them from any further expense for board, sickness, everything; Mr. Case said he didn’t want to run any chances: Custis made the proposal; they talked together; Orestes said, he thought three dollars was too much; that my sister would take her for twelve shillings if she wasn’t going away; this was Mrs. Tiffany, who went to Ohio.”
The plaintiff’s son, who was also present, testified as ioEows:
“Curtis said, wiE you board her for $2.50 a week as you have been doing ? father said no; he would board her for three doEars per week as long as she was around. Both defendants said they would not agree to that; one proposed and asked if he would board her for five dollars per week and stand the funeral expenses and everything; father would not agree to that. That is the substance of what was said. My grandmother said, she wanted to stay there at our house; they offered to take her home with them; she didn’t want to go.”
The defendant Curtis Hitchcock, in relating the same interview, said:
“The question came up about mother’s support; I asked why they saw fit to raise the price from twenty shillings to three doEars a week; there had been no talk before that occasion about the support of mother. Amelia, the plaintiff’s wife, said, at this conversation, they could not afford to board mother for less than three doEars a week when she was well and needed no extra care, and didn’t have to be up with her nights; I said, how would we come to make out a price, unless we agree as to what, it was worth when there was extra service; I think I said, we came to see what arrangement we could make for mother’s board. I asked what they would charge for her board if she continued to stay with them; they said three doEars a week, Mr. and Mrs. Case said that; I said, supposing she is sick, then if there was extra charge, what will it be? They said they could not teE; I said I should want to know what I should have to pay, in case she was sick; they said they could not teE now much extra care she would want. I said I wouldn’t enter into any agreement to pay, unless it was an agreement drawn up, stating how much there would be to pay_ when she was sick, as well as when she was well; they said they could not tell how much it would be when she was iE, as it depended on how much they would be up nights. I said, suppose that we caE it five *254 dollars a week or seven dollars a week; I said I would not-ask you to do it for less than I would be willing to do it for, but it is not so much the amount as to have some agreed sum fixed. I told them I would not agree to any sum per week when she was well unless there was an agreement as to the price when she was sick so I would understand what I was to pay; this was about all that was said; I said to them, I would be willing to take mother with me for a home as long as she lived, and if they did not see fit to help, she should have a home and I would care for her to the best of my powgr. I told Mr. Case, that night, that my sister Emily said she could have a home at her house, and that Orestes said she could have a home there.”
Orestes Hitchcock, the other defendant, also gave evidence as to the same conversation and substantially agreed with his brother.
It will thus be seen, that all of the witnesses agree that there was a failure at this interview to agree upon any terms by which the defendants were to pay for the board and maintenance of their mother. The defendants expressed their unwillingness to consent to any agreement, unless the sum, which they were to pay for the board of their mother was definitely agreed upon. The parties disagree upon every question under consideration at that interview relative to the support and maintenance of Mrs. Hitchcock, and particularly that the defendants protested against incurring any liability, unless it embraced the care and attendance of their mother in sickness, as well as when in her usual state of health. This, the plaintiff does not deny. The evidence would not have supported a finding by the referee, that upon that occasion the defendants requested the plaintiff to board their mother, and thus leaving it to the law to imply a promise on their part to pay for the same, what it might be worth. Such a finding would be wholly inconsistent with their declared position made during the consultation.
There is another and distinct item of evidence tending to make out a cause of action against each of the defendants, severally, for the board and care of Mrs. Hitchcock during a portion of the time embraced within the plaintiff’s claim, and as found in the testimony of the plaintiff’s wife, in which she in substance states, that at that time, subsequent to the interview which has been referred to, the defendant said, in substance, that he was willing to settle, that Curtis was not; and that he then said: “If you will take good care of mother, you shall be well paid for it.” This was the substance of the conversation. That at another time she had a conversation with the defendant, Curtis, at- *255 her house at a time when her mother was sick, and he said that his mother was worse than he supposed, and that he then said to “me, if I would take good care of mother, I should be well paid, or I should get well paid; he said it was the best place for her at our house.”
In this part of her evidence, the witness was partially sustained by the evidence of her son William. Both of the defendants contradict the witnesses in this part of their evidence. The referee in dismissing the plaintiff’s complaint upon the merits necessarily discredited the plaintiff’s evidence in this particular or he would have awarded the-plaintiff some sum for board and maintenance after the time of the alleged conversation. After all the interviews- and conversations had between the parties already referred to on the 28th day of April, 1885, the plaintiff addressed a letter to the defendant, Orestes Hitchcock, reviewing the situation in regard to the support and maintenance of their mother and the views which he, himself, entertained upon the subject, and the same is a tacit admission that the defendants had not assumed or become obligated to him in any form to pay for or to contribute for the board of Mrs. Hitchcock; and that they had left it to him and his wife unjustly to bear that burden. It remains to look up some of the exceptions taken to the reception and rejection of evidence.
After the cross-examination of the defendant, Orestes, his own counsel asked him the following questions: “Did you assent to any proposition made by Mr. Case for the care of your mother ? ” This was objected to by the plaintiff’s counsel as incompetent and as calling for a conclusion. The objection was overruled and the plaintiff excepted, and the witness answered, no. “Did Mr. Case assent to any proposition you made % ” Same objections were interposed with the same ruling and exceptions, and he also answered this question in the negative. This inquiry related to the first interview concerning which the plaintiff, himself, gave evidence; we incline to the opinion that this was incompetent evidence. The witness had detailed the conversation in full as he recollected it, and whether the bargain was concluded or not was a question for the referee to determine. Nicolay v. Unger, 80 N. Y., 54.
We have reached the conclusion, moreover, that this evidence could have done the plaintiff no possible harm. At the time the ruling was made, as has been already stated, the plaintiff’s evidence was wholly insufficient to maintain a recovery. He did not prove any assent or agreement to pay for the board of Mrs. Hitchcock in the plaintiff’s family. The ruling excluded the will of a Munson Hitchcock, and the decree of the surrogate on the accounting *256 was correct. Neither was it competent evidence on any of the issues involved in the action.
Judgment affirmed, with costs.
All concur.